[No. 12954. In Bank. — May 31, 1889.]

# CENTRAL IRRIGATION DISTRICT, RESPONDENT, v. R. DE LAPPE, SECRETARY, ETC., DEFENDANT, AND LEE S. WAKEFIELD, INTERVENOR, APPELLANTS.

IRRIGATION DISTRICTS — PUBLIC CORPORATIONS. — Irrigation districts are public corporations to the same extent as reclamation districts.

ID. — PROCEEDINGS FOR FORMATION TO BE LIBERALLY CONSTRUED. — The rule that proceedings to divest a person of his property *in invitum* are to be strictly construed does not apply to proceedings for the formation of irrigation districts. Such proceedings are to be liberally construed to carry out the purposes of the law.

PETITION — ORDER ESTABLISHING BOUNDARIES — DESCRIPTION — RULES OF CONSTRUCTION — MONUMENTS — FALSE CALLS — PAROL EVIDENCE. — A description by metes and bounds which would be sufficient in an ordinary deed is sufficient in the petition and in the order establishing boundaries; and the same general rules of construction apply in each case. Therefore plain monuments control courses and distances, false calls may be rejected and lines supplied by intendment, and parol evidence is admissible to explain and locate calls.

BOND — DEFECTIVE REFERENCE TO PETITION. — If the bond required from the petitioners recites two names as petitioners, which were not such in fact, but was filed with the petition, and it appears that there was no other petition than the one filed, the reference is sufficient for purposes of identification.

ID. — CONDITION. — Where the statute required a bond conditioned to pay in a certain contingency, and the condition of the bond given was to pay in any event, *held*, that the bond was sufficient.

ID. — POWER OF THE BOARD TO ALLOW A NEW BOND TO BE FILED IN LIEU OF A DEFECTIVE ONE, AND TO CONTINUE THE HEARING FOR THAT PURPOSE. — If the bond filed with the petition is defective merely, the board has power to allow a new bond to be filed, and to continue the hearing for that purpose. Such new bond "accompanies" the petition within the meaning of the statute.

PRESENTATION OF PETITION — REGULAR MEETING OF BOARD — COLLATERAL ATTACK ON REGULARITY OF MEETING. — Meetings of the board held as and for regular meetings under an ordinance prescribing the meetings, and which were the only "regular" meetings held for a long period, are "regular" within the meaning of the statute, and objections to the validity of the proceedings on the passage of the ordinance are immaterial. Even if the ordinance was not properly passed, that fact would not have any such collateral and far-reaching effect as to render abortive all the public business transacted at such meetings.

PUBLICATION — SLIGHT MISTAKES. — Slight mistakes in the spelling of names etc., in the publications are unimportant.

MODIFICATION BY THE BOARD OF THE BOUNDARIES OF THE PROPOSED DISTRICT — INCLUDING OTHER LANDS UPON REQUEST OF OWNERS — EX-

79 351
87 145

79 351
91 436

79 351
92 307

79 351
98 208

79 351
99 562

79 351
113 517

79 351
d117 387
117 396

79 351
138 134

79 351
141 456

79 351
144 334

CLUDING LANDS WHICH ARE EMBRACED WITHIN THE DESCRIPTION OF
THE PETITION, AND WHICH ARE SUSCEPTIBLE OF IRRIGATION. — The
board has power upon the final hearing to include within the district
lands not included by the petition, upon application of the owners thereof;
such application need not be in writing, and if lands which are embraced
within the description of the petition, and which are susceptible of irri-
gation, etc., are excluded by the board, its action is final so far as the
validity of the organization of the district is concerned.

ID. — STATEMENT OF REASONS OF THE DECISION OF THE BOARD. — It is not
necessary that the order establishing the boundaries should state the
reasons of the board for excluding lands. Such order is a sufficient de-
cision.

ELECTION PROCLAMATION — PUBLICATION — NUMBER OF INSERTIONS. — The
provision that the election proclamation shall be published "for three
weeks prior to the election" designates the period of publication only,
and not the number of insertions, which latter is left to the reasonable
discretion of the board. Instance of reasonable publication.

ELECTION PRECINCTS — WHEN TO BE ESTABLISHED. — The election precincts
are not required to be established thirty days before the election. It is
sufficient if they are established by the election proclamation, which is
required to be published for three weeks.

FORM OF DISTRICT BONDS. — Bonds of the district drawn so as to be each
payable in installments are in proper form.

APPEAL from a judgment of the Superior Court of
Colusa County.

The facts are stated in the opinion.

*W. F. Goad*, and *W. C. Belcher*, for Appellant De Lappe.

*H. M. Albery*, and *K. Albery*, for Appellant Wakefield.

*Richard Bayne*, for Respondent.

*Stanton L. Carter, amicus curiæ.*

HAYNE, C. — This was an application for *mandamus* to
compel the secretary of an irrigation district to sign and
seal certain bonds. One of the property owners of the
district was allowed to intervene for the purpose of
contesting the validity of the bonds. The court below
awarded the *mandamus*, and the defendant and the inter-
venor appeal.

The district was organized under the act known as

the Wright law. (See Laws 1887, p. 29.) This act was held to be constitutional in *Turlock Irrigation District* v. *Williams*, 76 Cal. 360. In that case irrigation districts were likened to districts organized for the reclamation of swamp-lands; and the court said that it was inclined to think that they were to be regarded as public corporations. We think that the analogy between the two kinds of corporations is strong. The purpose of the one is to make large bodies of land fit for cultivation by removing the excess of water; and that of the other is to make large bodies of land fit for cultivation by distributing water over them. Their general powers are similar in many respects, and they are organized upon the same plan. It is settled that reclamation districts are public corporations. (*Dean* v. *Davis*, 51 Cal. 410, 411; *People* v. *Rec. Dist.*, 53 Cal. 348; *People* v. *Williams*, 56 Cal. 647; *Hoke* v. *Perdue*, 62 Cal. 546; *People* v. *Larue*, 67 Cal. 528.) And we think that irrigation districts must be held to be so,— to the same extent.

Many objections are taken to the proceedings for the organization of the district. And the argument in relation thereto rests in great part upon the proposition that the proceedings are to be strictly construed. This is put upon two grounds. It is said, in the first place, that the proceedings are for the purpose of divesting the citizen of his property *in invitum*. It is true that later on provision is made for assessing the property within the district for the purpose of defraying expenses. But no assessments have yet been levied, and none are involved in the case before us. The objections made relate to the organization of the district. The primary purpose of such organization is to perform certain important public functions. The power of assessment, it is true, is incidental. But in the same way it is incidental to cities, and other municipal corporations, strictly so called, for the improvement of streets, etc. And it can no more be said that for this reason proceedings for

the organization of irrigation districts are for the purpose of depriving the citizen of his property *in invitum* than the same could be said of proceedings for the organization of cities and other municipal corporations.

It is said, in the next place, that the district was not created by the legislature itself, but by or under the supervision of a local body. But all municipal corporations in the state are henceforth to be created in this way. The constitution provides that corporations for municipal purposes shall not be created by special laws, but shall be organized under such general laws as the legislature shall provide. (Art. 11, sec. 6.) This necessitates organization under some kind of local supervision. And the general laws which the legislature has provided require that the organization shall be under the supervision of a local body much in the same way as in the case of an irrigation district. A petition "which shall set forth and particularly describe the proposed boundaries of such corporation" is to be presented to the board of supervisors of the county, which body is to deal with it much in the same manner as the board is to deal with the petition for the formation of an irrigation district. In fact, the phraseology of the irrigation law is so similar to that of the municipal corporation act as to make it evident that the former was modeled upon the latter. (See Laws 1883, p. 94.) Hence if proceedings for the formation of irrigation districts are to be strictly construed because they are organized under the supervision of a local body, proceedings for the formation of municipal corporations must be so construed for the same reason. But the consequences of wiping out municipal organizations, perhaps after property rights had grown up, because of some slip in the preliminary proceedings, would be so serious that we cannot think that any court would adopt the strict rule of construction which would require it. It will be time enough to apply such a rule when questions as to the extent of the powers arise. So

far as proceedings for the organization are concerned, we think that a reasonably liberal rule of construction should be adopted to carry out the wise purposes of the law.

In the light of this rule, we proceed to examine the various objections made: —

1. Several objections are taken to the description contained in the petition. They are based upon the requirement of the second section of the act that such petition "shall set forth and particularly describe the proposed boundaries of such districts." It is probable that this provision requires a description by metes and bounds, for it is "the boundaries" which are to be described, and not merely the district. But we think that a description by metes and bounds which would be sufficient in an ordinary deed is a compliance with the provision. "The same construction that is given to grants is given to statutes which prescribe the boundaries of incorporated territories." (*Cold Spring Iron Works* v. *Tolland,* 9 Cush. 496.) It has even been held that a more liberal rule should be applied. (*Hamilton* v. *McNeil,* 13 Gratt. 394.) But at all events a description by metes and bounds which would be good in a deed is sufficient in the petition.

Now, the main point in regard to the description is, that it cannot be made to close upon itself. The learned counsel say that "the only way in which this could be done would be to change the distance ' 200 feet,' in line 10 of folio 14, to ' 2,000 feet,' and ' 540 feet,' in line 6 of folio 18, to ' 5,400 feet.' " But if this is necessary, we think that it can and should be done upon the data furnished by the petition itself. The first call referred to is as follows: "thence south 34 degrees east 200 feet *to stake* 208." For anything that appears to the contrary, this stake is a perfectly plain monument; and being so, it must control the statement of the distance. (*Mills* v. *Lux,* 45 Cal. 273; *Penry* v. *Richards,* 52 Cal. 672.) If,

therefore, it is 2,000 feet from the point of departure, the call for 200 must be rejected. False calls may be rejected, and lines supplied by intendment in the description of the boundaries of a municipal corporation. (*In re Inhabitants of Ipswich,* 13 Pick. 431.) A false call may be rejected even in a tax deed. (*Bosworth* v. *Danzien,* 25 Cal. 299.) The objection to the call for "540 feet" is to be disposed of in a similar way.

It is also contended that the starting-point and certain other calls of the description are too indefinite. But we cannot say from the face of the paper that this is so. And the evidence to explain and locate the calls (which was clearly admissible: *Reamer* v. *Nesmith,* 34 Cal. 626) makes them sufficiently definite.

Similar objections are made to the description in the order of the board establishing the boundaries of the district, and similar answers apply.

2. It is contended that a proper bond was not filed with the petition. The provision of the act is that "the petitioners must accompany the petition with a good and sufficient bond, to be approved by the said board of supervisors, in double the amount of the probable cost of organizing such district, conditioned that the bondsmen will pay all said cost in case said organization shall *not* be effected; . . . . *when such petition is presented,* the said board of supervisors shall hear the same," etc. (Sec. 2.)

The petitioners presented and the board approved a bond which is claimed to be insufficient in form. The particulars in which it is said to be insufficient are the following: It is said, in the first place, that the recital in the bond misdescribes the petition. The petition was signed by sixty-four persons, among whom were J. A. Sutton, James McDermott, George B. Harden, George M. Sutton, and P. R. Garnett. The recital in the bond is, that "whereas J. A. Sutton, James McDermott, George B. Harden, George M. Sutton, P. R. Garnett, *N. D. Ride-*

*out, A. J. Tully,* and others, their associates, propose to present herewith" a petition, etc. Rideout and Tully did not sign the petition. The argument is, that the petition filed does not correspond to the one referred to in the bond, and consequently that there was no bond upon that petition. , The recital, however, is not of a petition actually presented, but of one *proposed* to be presented. There is no pretense that any other petition was presented. The bond did, in fact, accompany this petition. And we think that this circumstance, coupled with the recital, is sufficient to identify the document.

In the next place, it is said that the bond was not conditioned as required by the act. The condition was, that the bond should be void "if said obligors or bondsman shall pay all the costs," etc., while the condition required by the statute is, that the bondsmen shall pay the cost "in case said organization shall not be effected." The difference is, therefore, that the bond given provided that the bondsmen should pay the cost in any event, while the statute only requires that they should pay in a certain contingency. We think, however, that the bond may fairly be said to include the provision required by the statute, and that it is not vitiated by including something which was not required. And the use of the singular number in the phrase "if said obligors or bonds-*man* shall pay," etc., is unimportant.

But at most the bond was defective merely. And, if it be assumed for the purposes of the case that the giving of a bond was jurisdictional, we think that the board had power to allow a new one to be given before taking action on the petition. The petition was presented, pursuant to notice, on October 10th; and when the matter came up on that day, the board made an order allowing a new bond to be filed, and continuing the hearing until a future day. A bond free from objection was filed, and the board then proceeded with the hearing. We think that this course was within the power

of the board. No time is fixed for the presentation of a petition. It is to be presented at a regular meeting pursuant to notice. And the bond must "accompany" the petition. Neither the petition nor the bond need be filed before the petition is presented; and the hearing and the action of the board in the matter may be at the same meeting, although power is expressly given to adjourn for a certain time. It is sufficient, therefore, if the bond be given on the day of the hearing. And we think it clear that there was power to adjourn the hearing so as to allow a proper bond to be filed. Such a bond may be said to "accompany" the petition in the sense of the statute. Even in the case of an appeal bond it was held, prior to the enactment of any statute on the subject, that where a bond had been given which was defective merely, the defects could be cured by giving a new bond in the supreme court. (See cases in Hayne on New Trial and Appeal, p. 651.)

3. It is objected that the petition was not presented at a lawful meeting of the board. The act provides that the petition "shall be presented at a regular meeting of said board." A similar provision is in the municipal corporation act. (Laws 1883, p. 94.) In relation to meetings of boards of supervisors, the county government act has the following: "The board of supervisors must by ordinance provide for the holding of regular meetings of the board at their respective county seats." In pursuance of this provision, the board, on April 11, 1885, passed an ordinance fixing the times for its regular meetings. Meetings were held under this ordinance for nearly two years, and up to and including the presentation of the petition. The objections made go back to the validity of this ordinance. It is said that it was not properly recorded in the ordinance-book. But its recording in that book has been held to be not essential to its validity. (*People* v. *Cole*, 70 Cal. 60.) It is further said that the vote of one of the supervisors was not shown by

the entry in the minutes or by the publication. But the meetings were held under this ordinance for a long period as and for regular meetings, and they were the only meetings of the kind which where held. And we do not think that the question of their regularity can have any such far-reaching and collateral effect as to render abortive all the public business that has been transacted during a series of years.

4. It is contended that the petition was not published. The objections in this regard are founded on slight mistakes in the spelling of some of the names, which are entirely unimportant, and of certain defects in the description, which are disposed of by what is said under the first head.

5. It is urged that the board had no power to modify the boundaries of the proposed district in the way it did. What the board did was, in the first place, to include in the district certain lands not included by the petition, upon the verbal request of the owners; and in the second place, to exclude from the district certain lands included by the petition. The provisions of the act under which this was done is as follows:—

"The said board on the final hearing may make such changes in the proposed boundaries as they may find to be proper, and shall establish and define such boundaries; *provided*, that said board shall not modify such boundaries so as to except from the operation of this act any territory within the boundaries of the district proposed by said petitioners which is susceptible of irrigation by the same system of works applicable to the other lands in such organized district; nor shall any lands which will not, in the judgment of said board, be benefited by irrigation by said system be included within such district; *provided*, that any person whose lands are susceptible of irrigation from the same source shall, upon application of the owner to said board, be entitled to have such lands included in said district." (Sec. 2.)

(*a*) The objection to the inclusion of lands not embraced in the petition is, that the application of the owners (which is admitted to have been made) was not in writing. But although it would be more satisfactory and prudent to make such applications in writing, we see nothing in the act which requires a writing; and we do not think that the court is authorized to superadd such a requirement.

(*b*) The objection to the exclusion of lands from the proposed boundaries is based upon the proviso that "said board shall not modify such boundaries so as to except from the operation of this act any territory within the boundaries of the district proposed by said petitioners which is susceptible of irrigation by the same system of works applicable to the other lands in such organized districts." The appellants offered evidence to show that the excluded lands were in fact susceptible of irrigation by the same system of works as the other lands; and such evidence was excluded on the ground that the judgment of the board as to the matter was final. We think that this ruling was right. It is to be observed that no power is given to the board to *include* lands which are not included by the petition, except upon request of the owners. And with reference to *excluded* lands, it is possible (although we express no opinion upon the point) that the owners could, upon request and a proper showing in some appropriate proceeding, have their lands reincluded. But so far as the validity of the organization of the district is concerned, we think that the judgment of the board cannot be contradicted as is attempted here. It is clear that this would be so in the absence of the proviso quoted. (*People* v. *Hagar,* 66 Cal. 60; *People* v. *Riverside,* 70 Cal. 461.) And from the nature of the question, we think that the proviso must be considered merely as a rule for the guidance of the board, and that so far as the validity

of the district is concerned, their decision is as conclusive as if the proviso had not been inserted.

It is objected to this view, however, that the records simply show what the action of the board was, and do not show the grounds or reasons upon which such action proceeded, or, as counsel put it, that there was any decision of the board upon the question of the application of the system of works to the excluded lands. But the order fixing and establishing certain boundaries excluding certain of the lands included by the petition is certainly a decision as to where the boundaries shall be; and there is nothing in the act which requires the board to state why it fixes the boundaries in any particular place. And we think that it may be safely laid down as a general proposition that the reasons or grounds of the action of any tribunal or body, whether legislative or judicial, need not be stated unless the law expressly so requires. It is to be observed that there is a clear distinction between cases of the statement of the reasons or grounds of the action which a tribunal is authorized to take, and cases where the power to act depends upon the existence of antecedent conditions. We think that this case belongs to the former class.

6. It is objected that the proclamation for the election on the question of the organization of the district was not published as required by the act. The objection is based partly on small inaccuracies in the description, which have been already considered, partly on unimportant mistakes in the spelling of names, and partly on the alleged ground that the proclamation was not published for "three weeks prior to the election." These words, we think, simply indicate the time during which the notice is to be published, and not the manner of the publication. (*In re Cunningham*, 73 Cal. 558, 559.) And nothing being said about the number of publications, we think that this matter was left to the discretion of the board. The board ordered that the

publication be made in a weekly newspaper "as often (or for four insertions) as the same may be published between this date and the said day of election." This order was made on October 28th. The election was on November 22d, and the proclamation was published on October 29th, and on the 5th, 12th, and 19th of November. This, we think, was sufficient.

7. It is said that the voting precincts were established less than thirty days before the election. The irrigation act does not say in terms when the voting precincts shall be established. It says, however, that "such election shall be *conducted* in accordance with the general election laws of the state." And by the general election laws, the voting precincts must not be established less than thirty days before the election.

We are inclined to doubt whether the "conducting" of an election necessarily includes something which cannot take place within thirty days before the election day. But assuming that it does, the evident meaning is, that the election shall be conducted in accordance with the general laws except as otherwise provided in the act itself. The act provides that "for the purposes of the election above provided for, the said board of supervisors must establish a convenient number of election precincts in said proposed district, and define the boundaries thereof, which said precincts may thereafter be changed by the board of directors of such district." (Sec. 3.) This provision does not say when the precincts are to be established. But we think it cannot be the meaning that the board is to establish them thirty days before the election. For the notice of election is to be, or at least may be, given at the time the order establishing the boundaries of the district is made (sec. 3); and only three weeks' publication of the same is required. Hence the election may take place within less than thirty days from the time when it is first known where the boundaries of the district are to be. Consequently the argu-

ment made would require the voting precincts to be
established before it was known where the district was
to be or what it was to include. No such absurd con-
struction will be adopted. The time for the establish-
ment of the precincts seems to be left to the discretion of
the board. They were established by the election proc-
lamation, which was published for at least three weeks,
and this we think was sufficient.

8. It is finally objected that the bonds were not in
proper form. The provision of the act is as follows:—

"Said bonds shall be payable in gold coin of the
United States in installments as follows, to wit: At the
expiration of eleven years, not less than five per cent of
said bonds; at the expiration of twelve years, not less
than six per cent; at the expiration of thirteen years, not
less than seven per cent; at the expiration of fourteen
years, not less than eight per cent; at the expiration of
fifteen years, not less than nine per cent; at the expira-
tion of sixteen years, not less than ten per cent; at the
expiration of seventeen years, not less than eleven per
cent; at the expiration of eighteen years, not less than
thirteen per cent; at the expiration of nineteen years,
not less than fifteen per cent; and for the twentieth
year, a precentage sufficient to pay off said bonds."
(Sec. 15.)

The bonds here involved were drawn so as to make
each one payable in installments. And the objection is,
that a proper construction of the act requires that a cer-
tain number of bonds should be payable in eleven years,
a further number in twelve years, and so on. We think,
however, that the bonds were in proper form. The
phrase, "a bond payable in installments," is clear, and
can mean only one thing. Is the meaning changed by
putting it in the plural, and making it "bonds pay-
able in installments"? But there are other provisions
of the act which make the intention clear. The six-
teenth section provides that "the board may sell said

bonds from time to time *in such quantities as may be necessary and most advantageous,"* etc. It may happen, therefore, that only a portion of the bonds are sold. Now, for illustration, we will suppose that the bonds are issued on appellant's theory, and that only those payable at the end of eleven years are sold. In such case the only bonds outstanding would be the eleven-year bonds; for a bond which has not been sold, or in other words, not issued, cannot be said to be "outstanding." The whole amount of the principal of such bonds would be due and payable at the end of eleven years. How would it be paid? The twenty-second section provides, in substance, that at the expiration of the tenth year the board of directors shall make an assessment "in the following percentage of the principal of the whole amount of bonds *then outstanding,* to wit, for the eleventh year, *five* per cent," etc. This is the only provision for raising money to pay the principal of said bonds. It would therefore result upon the appellant's theory that although the whole amount of the principal of the eleven-year bonds would be due and payable, only five per cent thereof could be paid. And similar results would follow as to the others. While, as the bonds are drawn, five per cent upon the whole amount of the principal of the bonds "then outstanding" would be sufficient to pay off each installment of the principal as it became due. It may be that the legislature supposed that there was a good reason for making each bond run in part for the whole twenty years. As is well known, a bond for a long term is more salable (other things being equal) than a bond for a short term. And the object may have been to help the sale of the short bonds by incorporating them with the long ones. However this may be, we think that the intention to have the bonds drawn as the respondent has drawn them is sufficiently expressed.

The other matters do not require special notice.

We therefore advise that the judgment appealed from be affirmed.

FOOTE, C., concurred.

BELCHER, C. C., being disqualified, took no part in this decision.

The COURT.—For the reasons given in the foregoing opinion, the judgment is affirmed.