(November 25, 1905.)

## NAMPA AND MERIDIAN IRRIGATION DISTRICT v. BROSE.

[83 Pac. 499.]

IRRIGATION DISTRICT LAW—TITLE TO ACT—CONSTITUTIONAL LAW—CONFIRMATION OF ORGANIZATION OF DISTRICT—CONFIRMATION OF BONDS—NOTICE OF HEARING—PUBLICATION THEREOF—CONSTRUCTIVE NOTICE—JURISDICTION—TOWNS AND VILLAGES—WAIVER OF RIGHT TO RECEIVE WATER—CONSTRUCTION—FINDINGS OF COURT.

1. The title to an act entitled, ''An act relating to irrigation districts and to provide for the organization thereof, and to provide for the acquisition of water and other property, and for the distribution of water thereby for irrigation purposes and for other and similar purposes,'' held not repugnant to the provisions of section 16, article 3 of the state constitution.

2. Said act is not repugnant to any of the provisions of our state constitution.

3. Under the provisions of said act, held that the Nampa and Meridian Irrigation District is a legally organized and existing irrigation district under the provisions of said act.

4. Under the provisions of said act, the board of directors of an irrigation district may commence a proceeding like the one at bar, in and by which the proceedings of the board and of said district providing for and authorizing the issue and sale of the bonds of said district may be judicially examined, approved and confirmed, whether said bonds or any of them have been sold at the time of the commencement of such proceedings or not.

5. That all of the provisions of said act concerning the submission of the question of bonding said district for the sum of $583,505 to the legal voters of said district have been substantially complied with, and that said bonds have been legally voted and when issued will be valid bonds against said district.

6. Under the provisions of said act the court is empowered and given jurisdiction upon the hearing of such proceedings to examine and determine the legality and validity of, and approve and confirm each and all of the proceedings for the organization of such district under the provisions of said act, from and including the petition for the organization of the district, and all other proceedings which may affect the legality or validity of such bonds and the order for the sale thereof.

7. Notice of the hearing for confirmation may be by posting and publication as provided in said act.

8. When the lots and lands within a town or village will be benefited by irrigation under the system proposed for such district, such towns and villages may be included within an irrigation district.

9. While said act contemplates a general plan for the purchase or construction of the necessary irrigation canals and works for the purpose for which such irrigation district is organized, a land owner within said district may, with the consent of the district, waive his right to water from such district where it appears that no one residing within the district is injured or prejudiced thereby. In such a case no part of the bond issue can be apportioned to the land whose owner has agreed with the district to waive all claims against it for water.

10. In such proceedings, the court must disregard any error, irregularity or omission which does not affect the substantial rights of the parties to such proceedings.

11. *Held*, the findings of the court are fully sustained by the evidence.

(Syllabus by the court.)

APPEAL from the District Court of Ada County. Honorable George H. Stewart, Judge.

Proceedings to determine the validity of the organization of the Nampa and Meridian Irrigation District, and the validity and legality of a certain bond issue, and for confirmation of all proceedings connected therewith. Judgment for plaintiff and respondent. Judgment affirmed.

The facts are stated in the opinion.

Hawley, Puckett & Hawley, for Appellant.

A proceeding to have reviewed and confirmed by the district court the organization of an irrigation district is bar to any further judicial inquiry into such organization as will affect a bond issue based thereon. (*Modesto Irr. Dist. v. Tregea,* 88 Cal. 334, 23 Pac. 237; *Crall v. Board of Directors of Poso Irr. Dist.,* 87 Cal. 140, 26 Pac. 797.)

Hugh E. McElroy and Wood & Wilson, for Respondent.

Statutes analogous to the act in Idaho providing for the formation of irrigation districts have been held constitutional in California. (*Turlock Irr. Dist. v. Williams,* 76 Cal. 360, 372, 18 Pac. 379; *Crall v. Board of Directors of Poso Irr. Dist.,* 87 Cal. 140, 26 Pac. 797; *Modesto Irr. Dist. v. Tregea,* 88 Cal. 334, 26 Pac. 237.)

SULLIVAN, J.—This is a proceeding instituted in pursuance of an act approved March 9, 1903 (Sess. Laws 1903, p. 150), for the purpose of obtaining judicial confirmation of the organization of the Nampa and Meridian Irrigation District, located in Ada and Canyon counties, and the confirmation of all the proceedings of the board of directors, whereby the voters of said irrigation district, on the twenty-sixth day of August, 1905, by their votes authorized said board of directors to issue and sell the bonds of said district to the amount of $583,505, for the purchase and enlargement of what is known as the Ridenbaugh canal system in said counties.

Default was entered against all of the parties interested as defendants, except the appellant, R. C. Brose, who appeared and demurred generally to the petition, which demurrer was overruled by the court, and no answer being filed, default was entered accordingly. Thereupon, proofs satisfactory to the court were made and judgment was entered as prayed for. This appeal is from the judgment.

The district irrigation law under which this proceeding is instituted is entitled, "An act relating to irrigation districts, and to provide for the organization thereof, and to provide for the acquisition of water and other property and for the distribution of water thereby for irrigation purposes, and for other and similar purposes." Said act, so far as the questions in this case are concerned, is substantially the same as what is known in the state of California as the Wright district irrigation law, with the acts amendatory and confirmatory thereof.

It is contended by counsel for the appellant that the title to the district irrigation act under consideration embraces more than one subject and matters properly connected therewith, and for that reason is repugnant to section 16 of article 3 of the state constitution. It is sufficient to say that the title above quoted does not embrace but one subject, and matters properly connected therewith.

In referring to the title of the irrigation law of this state, approved March 6, 1899, which is substantially the same as the title now under consideration, this court said in *Pioneer Irr. Dist. v. Bradley,* 8 Idaho, 310, 101 Am. St. Rep. 201, 68 Pac. 295, that however numerous the provisions of an act may be, if they can by fair intendment be considered as falling within the subject matter legislated upon in such act, or necessary as ends and means to the attainment of such object, the act will not be in conflict with said constitutional provisions. Said act has but one general subject, object or purpose, and all of the provisions of said act are germane to the general objects and purposes of the act. Said title does not embrace more than one subject, and matters properly connected therewith.

The constitutionality of said act is raised. So far as that is concerned, this court held in *Pioneer Irr. Dist. v. Bradley,* 8 Idaho, 311, 101 Am. St. Rep. 201, 68 Pac. 295, that the district irrigation law then in force was constitutional, and the act under consideration is a re-enactment of that law with slight alterations and amendments. The district irrigation law under consideration is substantially the same as the Wright law of California, with its amendments, and the act known as the confirmation act, approved March 16, 1889. In fact, the irrigation act under consideration was adopted from California, and prior to its adoption by this state, the supreme court of California had repeatedly held that law to be constitutional. The Wright law has been attacked from nearly every possible point of view, and the supreme court of that state has without deviation held it constitutional. (See Kinney on Irrigation, sec. 390.)

We hold that the district irrigation law of this state is not repugnant to any of the provisions of our state constitution.

The act under consideration provides, *inter alia,* for the organization of irrigation districts, and for the adoption and carrying out of plans for the irrigation of the land embraced within such districts. The first section of the act provides that ''whenever fifty or a majority of the holders of title, or evidences of title, to lands susceptible of one mode of irrigation from a common source and by the same system of works, desire to provide for the irrigation of the same, they may propose the organization of an irrigation district under the provisions of this act, and, when so organized such district shall have the powers conferred or that may be hereafter conferred by law, upon such irrigation districts.'' Said section further provides that such persons must hold title, or evidence of title, to at least one-fourth part of the total area of land in the proposed district, which will be assessable for the purposes of the district under the operation of said act, and makes the equalized county assessment-roll next preceding the presentation of a petition for the organization of such district, sufficient evidence of title for the purposes of said act.

The second section provides that a petition shall be presented to the board of county commissioners signed by the required number of holders of title, or evidence of title, of such proposed district, which petition shall set forth and particularly describe the proposed boundaries of the district, and shall pray that the same shall be organized under the provisions of said act, and shall state the time at which the same shall be presented to said board, and also that a map of the proposed district, showing certain things particularly mentioned in said section, shall accompany the petition. Said section also provides that on the presentation of such petition, said board shall set a time for hearing the same, which time shall not be less than thirty nor more than sixty days from the date of such presentation, and that notice of the time of such meeting shall be published by said board at least fifteen days before the time of such hearing in a newspaper published within the county in which such district is proposed to be organized, and that if any portion of the district be within another county or counties, that such notice shall be published in a newspaper published within each of said counties; said section also provides the duties of the state engineer therein, and also provides that said board shall, after such hearing, if the requirements of said law have been complied with, divide such irrigation district in three divisions, and also provides for the election of one director in each of said districts; and it is further provided that said board of county commissioners shall then give notice of an election to be held in such proposed district,' for the purpose of determining whether or not the same shall be organized under the provisions of said act.

Section 3 relates to the conduct of such election, and also provides for the election of the district officers at such elections, and the duties of such officers.

The question of the validity of the organization of said district is presented. Upon a review of the whole case and of the acts and things done in the organization of said district, and of all steps necessary to be taken under the provisions of said act, for the organization of an irrigation district, we con-

clude that each and every provision of said act has been substantially complied with in the organization of said district, and that it is a legally organized and existing district under the provisions of said act.

We will next consider several sections of said act bearing on the issuance of district bonds.

Section 11 of the act under consideration provides for proper surveys ''to determine the cost of the works necessary for the irrigation of the lands of the district,'' and also provides that ''the board of directors shall examine critically each tract or subdivision of land in said district, with a view of determining the benefits which will accrue to each of such tracts or subdivisions from the construction or purchase of such irrigation works, and that the cost of such work shall be apportioned or distributed over such tracts or subdivisions of land, in proportion of the benefits accruing thereto, and the amounts so apportioned or distributed to each of said tracts or subdivisions shall be and remain the basis for fixing the annual assessment levy against such tracts or subdivisions in carrying out the purpose of said act.'' The section further provides ''that the proceedings of said board of directors in making such apportionment of costs, and the said list of such apportionment shall be included with other features of the organization of such district which are subject to judicial examination and confirmation, as provided in sections 16, 17, 18, 19, and 20 of this act.''

Section 15 authorizes said board ''to formulate a general plan for the construction of the new canal system, or the acquisition of existing canal systems,'' and when those plans are fully formulated and the cost of construction or acquisition has been determined, the directors are authorized to submit the question of bonding the district to the legal voters thereof, for the purpose of securing necessary funds for the construction of such proposed work, or the purchasing of such systems. Said section also authorizes the district to enter into a contract with the United States for the construction of the necessary works under the provisions of what is generally known as the reclamation act of Congress, and the

rules and regulations thereunder, and further provides that the district may issue bonds for a portion of the indebtedness authorized by such bond election, and enter into an obligation or contract with the United States, to the extent of the remainder of such amount. After all jurisdictional steps have been taken and the bonds of the district have been voted, it is provided by the first proviso of section 15, and sections 16, 17, 18, 19 and 20, as follows:

"First Proviso, Section 15. The Board of Directors of said Irrigation District shall commence a special proceeding, in and by which the proceedings of said Board and of said district providing for and authorizing the issue and sale of bonds of said district, whether said bonds or any of them have or have not been sold, may be judicially examined, approved and confirmed.

"Sec. 16. The Board of Directors of the irrigation district shall file in the District Court of the county in which the lands of the district or some portion thereof are situated, a petition, praying in effect that the proceedings aforesaid may be examined, and approved and confirmed by the Court. The petition shall state the facts showing the proceedings had for the sale and issue of said bonds, and shall state generally that the irrigation district was duly organized, and that the first Board of Directors was duly elected, but the petition need not state the facts showing such organization of the district or the election of the first Board of Directors.

"Sec. 17. The Court or Judge shall fix the time for hearing of said petition, and shall order the Clerk of the Court to give and publish a notice of the filing of said petition.

"The notice shall be given and published in the same manner, and for the same length of time that the notice of a special election provided for by said act, to determine whether the bonds of said district shall be issued, is required to be given and published. The notice shall state the time and place fixed for the hearing of the petition, and the prayer of the petition, and that any person interested in the organization of said district, or in the proceedings for the issue or

sale of said bonds may, on or before the day fixed for the hearing of said petition, demur to or answer said petition. The petition may be referred to and described in said notice of the petition of the Board of Directors of ——— Irrigation District (giving its name) praying that the proceedings for the issue and sale of the bonds of said district may be examined, approved and confirmed by said Court.

"Sec. 18. Any person interested in said district, or in the issue or sale of said bonds, may demur to or answer said petition. The provisions of the Code of Civil Procedure, respecting the demurrer and the answer to a verified complaint shall be applicable to a demurrer and answer to said petition. The person so demurring to or answering said petition shall be the defendant to said special proceedings, and the Board of Directors shall be plaintiff. Every material statement of the petition not specifically controverted by answer must, for the purpose of said special proceedings, be taken as true; and each person failing to answer the petition shall be deemed to admit as true all the material statements of the petition. The rules of pleading and practice provided by the Code of Civil Procedure, which are not inconsistent with the provisions of this act, are applicable to the special proceedings herein provided for. A motion for a new trial must be made upon the minutes of the Court. The order granting a new trial must specify the issues to be re-examined on such new trial, and the findings of the Court upon the other issues shall not be affected by such order granting a new trial.

"Sec. 19. Upon the hearing of such special proceeding, the Court shall have power and jurisdiction to examine and determine the legality and validity of, and approve and confirm each and all of the proceedings for the organization of said district under the provisions of said act, from and including the petition for the organization of the district, and all other proceedings which may affect the legality or validity of said bonds, and the order for the sale and the sale thereof.

"The Court inquiring into the regularity, legality or correctness of said proceedings, must disregard any error, irreg-

ularity or omission, which does not affect the substantial rights of the parties to said special proceedings; and it may approve and confirm such proceedings in part, and disapprove and declare illegal or invalid other and subsequent parts of the proceedings.

"The Court shall find and determine whether the notice of the filing of said petition has been duly given and published for the time and in the manner in this act prescribed. The cost of the special proceedings may be allowed and apportioned between all the parties, in the discretion of the Court.

"Sec. 20.   An appeal from an order granting or refusing a new trial, or from the judgments, must be taken by the party aggrieved within thirty days after the entry of said order or said judgment."

Section 21 authorizes the board, after final judgment is entered in the proceeding authorized by the above-quoted sections, to "sell bonds from time to time in such quantities as may be necessary and most advantageous to raise money for the construction of said canal and works, the acquisition of said property and rights, and otherwise to fully carry out the objects and purposes of this act." That section also directs that the necessary notice must be given before the sale of any of said bonds, and provides what said notice shall contain, and that it shall be given by publication thereof at least thirty days in three newspapers published in the state of Idaho, etc.   Said section also provides that the board may reject all bids, and in case no bids are received at the time stated in the advertisement, it shall not again be necessary to advertise the sale of such bonds, but that they may be sold at any time until canceled, provided that they shall in no event be sold for less than the face value and accrued interest.

We find that all of the provisions of said act as conditions precedent to the submission of the question of bonding the district for the sum of $583,505, to the legal voters thereof, have been complied with, and that in the submission of the question of bonding said district to the legal voters thereof

for the said sum of $583,505, all of the provisions of said act in regard thereto have been substantially complied with, and that said bonds have been legally voted, and when issued will be valid bonds against said district.

The California confirmation act of 1889 was passed on and held valid in *Modesto Irrigation District v. Tregea,* 88 Cal. 334, 23 Pac. 237. The court there said: "As the validity of the bonds when issued depends upon the regularity of the proceedings of the board, and upon the ratification of the proposition by a majority of the electors, it is matter of common knowledge that investors have been unwilling to take them at their proper value, when all of the facts affecting their validity remain the subject of question and dispute. To meet this inconvenience for the security of investors, and to enable irrigation districts to dispose of their bonds on advantageous terms—the supplemental act under which this proceeding was instituted was passed. It provides that the board of directors of any irrigation district may commence a special proceeding, in and by which the proceedings of said board and the said district providing for and authorizing the issue and sale of the bonds of said district, whether said bonds, or any of them, have or have not been sold, may be judicially examined, approved and confirmed." This decision contains an exhaustive examination and consideration of the questions involved under the original district irrigation act, practically all of which provisions have been incorporated in the Idaho statute. (See, also, *Turlock Irr. Dist. v. Williams,* 76 Cal. 360, 18 Pac. 379; *Central Irr. Dist. v. De Lappe,* 79 Cal. 351, 21 Pac. 825; *Crall v. Poso Irr. Dist.,* 87 Cal. 140, 26 Pac. 797.) In those decisions the supreme court of California has decided several of the questions presented in the case at bar.

The notice of hearing in this matter was served by posting and publication, as provided by the provisions of section 17 of said act, and it is contended by counsel for appellant that such constructive service is not sufficient, but that personal service on all defendants must be made. Our irrigation law in that regard is the same as the Wright law of California, and the supreme court of that state in *Crall v. Poso Irr. Dist.,*

87 Cal. 140, 26 Pac. 797, holds that such proceeding as that at bar is a proceeding *in rem*, and is special in its nature, for the purpose of determining the *status* of the district, and its power to issue valid bonds. The court said: "In such proceedings, constructive service of process by publication and posting as prescribed by the Wright act is sufficient to give the court jurisdiction of the subject matter and of the parties, and its judgment is valid and binding as against them and all the world, upon all questions involved in the case until reversed on appeal or set aside by some direct proceeding instituted for that purpose." The service of the notice of hearing in this proceeding was sufficient to give the court jurisdiction.

It was suggested on the argument of this case that the act under consideration did not contemplate including towns or villages within an irrigation district. We cannot agree with that contention. If the lands within the towns or villages within such district will be benefited by irrigation under the system proposed, there is no ground upon which a court can say that an order including such lands in such district is void. This question is ably discussed in *Modesto Irr. Dist. v. Tregea*, 88 Cal. 351, 23 Pac. 237.

It is contended by counsel for appellant that the judgment of the lower court cannot be sustained because this proceeding was commenced before any bonds had been issued. There is nothing in that contention, for the reason that section 15 of said act provides that such proceedings may be commenced whether such bonds, or any of them, have or have not been issued or sold. It was the evident purpose and intent of the legislature that the validity of such bonds should be determined before they were actually issued, as it is well known that purchasers of bonds hesitate about purchasing them until after their validity and legality have been fully determined. And the bonds, no doubt, would bring a better price when it is known that there is no question in regard to their legality or validity. The legislature knew that fact, and wisely provided that this proceeding could be brought

before the issue and sale of the bonds, and their validity adjudicated.

Under the provisions of section 19 of said act, the court is empowered and is given jurisdiction upon the hearing' of this proceeding, to examine and determine the legality and validity of, and approve and confirm each and all of the proceedings for the organization of such district under the provisions of said act, from and including the petition for the organization of the district, and all other proceedings which may affect the legality or validity of such bonds and order for the sale, and the sale thereof, and in inquiring into the regularity, legality or correctness of such proceedings, the court is directed to disregard any error, irregularity or omission which does not affect the substantial rights of the parties to such proceedings; and it is further provided therein that the court shall find and determine whether the notice for the filing of the said petition has been duly given and published for the time and in the manner in said act prescribed; and it is contended in this case that the court acquired no jurisdiction in the matter, because the notice of filing said petition had not been duly given and published in the manner provided, but on an examination of the record before us, we find that the law in regard thereto has been substantially complied with, and that the court had full and complete jurisdiction to determine all of the matters as to whether the notice of filing said petition had been duly given and published, and to determine each and all matters that the court is authorized to pass upon in this proceeding. We also find that the notice of filing said petition has been duly given and published for the time and in the manner prescribed in said act, and that the court had full and complete jurisdiction in said matter. The court acquired full and complete jurisdiction in this matter by due service of the process authorized by said act. We further find that the notice of the bond election was given as required by the provisions of said act.

It is contended by counsel for the appellant that the judgment herein adjudges that the bonding plan set forth in the findings of the trial court and submitted at the bond election

by the irrigation district is a "general plan for the construction and acquisition of the necessary irrigation canals and works for carrying out the purposes for which said irrigation district was organized." Since it appears from the allegations of the petition and the findings of the court that the same was not a general plan, and only provided for the acquisition of the irrigation works for a part of the land of the district, it is contended that the district is not permitted to propose or adopt a plan that does not include all the land in the district. It appears that certain of the land owners in said irrigation district have executed contracts of waiver to the district. It appears that those who have executed such contracts are anticipating that they will procure water from government irrigation works proposed to be established, and it is further shown that none of the parties owning land within such district and for whom no provisions have been made to secure water from the proposed district works will be injured by way of taxation, since the law provides that the costs shall be apportioned to the tracts of land according to the benefits received, and it appears from the petition itself that no costs have been apportioned to the lands included in the contracts of waiver. It also appears that the district has acted strictly in pursuance of the request of the owner of the land where the plans do not provide water for any particular tract. As the allegations of the petition are taken to be true in this case, and the purpose of the law is to secure water for the lands of the district according to some feasible method and to charge the benefit to those receiving the same, that object will be accomplished, although the district itself furnishes only a part of the water. No one appeared in said proceedings and complained of the plan adopted, or challenged the allegations of the petitioners, but let us assume that someone who is injured had appeared at the hearing and raised the question, and it was admitted that such person had requested such district, by contract of waiver, to exclude his land from the general irrigation scheme proposed, and therein agreed to look to the government for his water, and had requested the district to make no provision for him,

he certainly could not complain, as the district merely complied with his request. His request had been granted and the district had not apportioned any part of the costs to his land, for the reason that he is not to receive any benefit for the money expended on behalf of the district. On the other hand, the land owner who looks to the district for water and to whom the costs have been apportioned cannot complain, for the simple reason that he is getting all the benefits resulting from the plans of the district and is paying for just what he gets and nothing more. He has no ground for insisting that any other man whose land receives no benefits shall be taxed for his benefit. He cannot be heard to say that some other person must secure water through the district plan, whether he chooses to or not. In the case of *Modesto Irr. Dist. v. Tregea, supra,* the supreme court of California considers this same question. The California law differs from our statute, in that it provides a method for the exclusion of lands from the district after the district has been organized. That district voted a bond issue, and subsequently, and before the bonds were sold, about twenty-eight thousand acres of land were excluded from the district, and the court there said: "The identity of the district was not destroyed by the exclusion of a part of its lands. Those who remained in the district will receive all the benefits of the expenditure of the proceeds of the bonds; they will not be compelled to pay anything for the benefits of others." In the case at bar, the lands of the district to which the proceeds of these bonds had been apportioned will receive all the benefits of such proceeds. They will not be compelled to pay anything for the benefit of those lands that contract with the government for a water supply, and have signed a contract of waiver.

While it seems that the primary purpose of the irrigation law was to organize in one district only such lands as can properly share in the same system of works, we think, under the liberal construction that courts are commanded to place upon this law, that the owners of lands properly included in such district may waive their rights to obtain water from the general district plan, and obtain water from another

source and by means of a different plan, where it is clearly shown that no one residing within the district is in any manner injured or prejudiced thereby.   It is provided in said act that the court in this proceeding must disregard any error, irregularity or omission which does not affect the substantial rights of the parties.   The California act contains substantially the same provisions, and in the case of *Central Irr. Dist. v. De Lappe,* 79 Cal. 351, 21 Pac. 825, the court holds that the rule that proceedings to devest a person of his property *in invitum* are to be strictly construed does not apply to proceedings for the formation of irrigation districts.   Such provisions are to be liberally construed to carry out the purposes of the law.   No part of the bond issue in this case can be apportioned to the land whose owner has agreed with the district to waive all claims against the district for water, and look to the general government therefor.   Without the consent of the land owner he cannot be left out of the general plan adopted for procuring water from the district, but with his consent and the consent of the district he may be left out. The trial court found that the notice of filing said petition had been duly given and published for the time and in the manner prescribed in said act.   We find on an examination of the record that the court was fully justified in making that finding.   From the record it clearly appears that each and every finding made by the trial court is fully supported by the record and must be sustained, and the judgment must be affirmed, and it is so ordered.   Costs are awarded to respondent.

. Stockslager, C. J., and Ailshie, J., concur.