[No. B015014. Second Dist., Div. Seven. Nov. 21, 1986.]

WINICK CORPORATION, Plaintiff and Appellant, v.
GENERAL INSURANCE COMPANY OF AMERICA,
Defendant and Respondent.

**COUNSEL**

Haight, Dickson, Brown & Bonesteel, Roy G. Weatherup, Hall R. Marston, Robert M. Dato, Jose H. Garcia, Golde, Higer, Silver & Wagner, Golde & Higer and David J. Golde for Plaintiff and Appellant.

Booth, Mitchel, Strange & Smith, George C. Mitchel and Ellen McKissock for Defendant and Respondent.

## OPINION

**ADLER, J.**\*—Plaintiff Winick Corporation (Winick) filed a complaint against defendant General Insurance Company of America (General). Winick appeals from a judgment of dismissal entered after defendant's demurrer was sustained without leave to amend. (Code Civ. Proc., § 581, subd. (c).) The trial court determined that the complaint against a surety on a stop notice release bond was barred by the statute of limitations. (Code Civ. Proc., §§ 337, 338, subd. 1.) We agree.

Plaintiff Winick filed a complaint with one cause of action against defendant General on December 27, 1984. The following facts are material to this cause of action: the Hydro-Mechanical Company (Hydro) was the prime contractor on a public works project for the County of Los Angeles Sanitation District No. 2 (District). Hydro entered into a subcontract with Winick for labor and materials for the electrical portion of this project. Later, Winick filed a stop notice on the District in October 1979, pursuant to Civil Code section 3179 et seq. The stop notice claimed that Hydro owed Winick $175,000 for labor and materials furnished for the construction of the project. On December 16, 1980, Hydro obtained a stop notice release bond from General to cover any possible obligations arising from Winick's stop notice. (Civ. Code, § 3196.)[1] According to the complaint, the District neither accepted the bond nor released any withheld funds "until at least one year" after the bond's issuance. Winick alleges it did not know of the bond's existence until May 19, 1981. Further, the complaint alleges that on May 14, 1985, Winick had brought a separate suit against Hydro, the District and Safeco Insurance Co. (on a performance bond). The court sustained General's demurrer on the basis that it was barred by statute of limitations Code of Civil Procedure sections 337 (four years on a written

---

\*Assigned by the Chairperson of the Judicial Council.

[1] Civil Code section 3196 reads as follows: "If the original contractor or subcontractor disputes the correctness or validity or enforceability of any stop notice, the public entity may, in its discretion, permit the original contractor to file with the public entity a bond executed by a corporate surety, in an amount equal to 125 percent of the claim stated in the stop notice conditioned for the payment of any sum which the stop notice claimant may recover on the claim together with his costs of suit in the action, if he recovers therein. Upon the filing of such bond with the public entity, the public entity shall not withhold any money or bonds (where bonds are to be issued in payment for the work of improvement) from the original contractor on account of the stop notice. . . ."

contract) and 338, subdivision 1 (three years on a liability created by statute).[2]

This case presents two issues: (1) Whether a cause of action on a stop notice release bond enforces a "liability created by statute"; and (2) when does a cause of action accrue under such a stop notice release bond? (Code Civ. Proc., § 338, subd. 2.)

 Winick argues that an action on a stop notice release bond, pursuant to Civil Code section 3196, is not on an obligation created by statute, but rather an action created by contractual agreement, and subject to the four-year limitation of Code of Civil Procedure section 337. We disagree.

California Code of Civil Procedure section 338, subdivision 1, provides that an action upon a liability created by statute must be brought within three years from the date on which the cause of action accrues. An obligation is created by statute if the liability would not exist but for the statute, and the obligation is created by law in the absence of an agreement. (*Gardner* v. *Basich Bros. Construction Co.* (1955) 44 Cal.2d 191, 194 [281 P.2d 521]; *Raymond* v. *Christian* (1937) 24 Cal.App.2d 92, 114-115 [74 P.2d 536]; 43 Cal.Jur.3d, Limitation of Actions, § 68, pp. 100-102.) The action must be of a type which did not exist at common law. (*People* v. *Wilson* (1966) 240 Cal.App.2d 574, 576 [49 Cal.Rptr. 792].)

Where a statutory scheme has been adopted that gives rise to newly created rights, the liability for breach of those rights is statutory. (*Raymond* v. *Christian, supra,* 24 Cal.App.2d at p. 92 [action by public officer to recover statutory compensation]; *Rossiter* v. *Benoit* (1979) 88 Cal.App.3d 706, 717 [152 Cal.Rptr. 65] [action for deprivation of civil rights].)

Here, the procedure authorizing the use of a stop notice release bond (Civ. Code, § 3196), is but one part of a detailed statutory scheme codified in section 3179 et seq. of the Civil Code. The statutes provide special remedies to protect the interest of those to whom a prime contractor may incur debts in connection with a public works project. An unpaid subcontractor or materialman supplying labor or materials used in construction of a public improvement, may protect his right to recover the amount due him by serving a stop notice upon the contracting public entity. (Civ. Code, § 3181.) The public entity, "upon receipt of a stop notice . . . [must] . . . withhold from the original contractor, . . . money . . . due or to become

---

[2]General also argued application of several other statutes of limitations contained in Code Civil Procedure section 583.210 et seq. (time for service and return of summons) and Civil Code section 3210 (limitation for actions on a stop notice), but our holding makes it unnecessary to resolve these issues.

due to such contractor in an amount sufficient to answer the claim stated in such stop notice and to provide for the reasonable cost of any litigation thereunder." (Civ. Code, § 3186.) "If the original contractor or subcontractor disputes the correctness or validity or enforceability of any stop notice, the public entity may, in its discretion, permit the original contractor to file with the public entity a bond executed by a corporate surety, . . . . Upon the filing of such bond with the public entity, the public entity shall not withhold any money . . . from the original contractor on account of the stop notice." (Civ. Code, § 3196; *Cal-Pacific Materials Co.* v. *Redondo Beach City School Dist.* (1979) 94 Cal.App.3d 652, 655-656 [156 Cal.Rptr. 590].)

Under this statutory scheme, a laborer or materialman may file a stop notice, requiring the public owner, under threat of personal liability, to withhold funds. (Civ. Code, § 3186.) If the prime contractor disputes the stop notice claim, a public entity may permit the contractor to file a release bond guaranteeing payment. (Civ. Code, § 3196.) Following the posting of such a release bond the stop notice claimant no longer has a claim against the public entity, but is required by statute to seek his claim against the surety on the bond. (*Cal-Pacific Materials Co.* v. *Redondo Beach City School Dist., supra,* 94 Cal.App.3d at p. 656.) This statutory scheme provides a fund from which a claimant may seek reimbursement.

These remedial statutes recognize that in most public construction projects, laborers and materialmen have entered into contracts with the prime contractor, and not with the public entity. Privy of contract does not then exist between these stop notice claimants and the public entity. Without privity of contract, and prevented by law from placing a lien on public property (Civ. Code, § 3109; *Pacific Employers Ins. Co.* v. *State of California* (1970) 3 Cal.3d 573, 576 [91 Cal.Rptr. 273, 477 P.2d 129]), the stop notice procedure is the only effective remedy available to laborers and materialmen. In creating the stop notice, these statutes have provided new remedies unknown to the common law. (*Connolly Development, Inc.* v. *Superior Court* (1976) 17 Cal.3d 803, 815 [132 Cal.Rptr. 477, 553 P.2d 637].)

In the present case, Winick has alleged a contract with Hydro, the prime contractor with the District on a public works project. Winick, as a subcontractor, is not in privy of contract with the District, and must totally depend on the statutory stop notice procedure. Winick's only possible grounds to assert liability against the District is through the sanctioned stop notice procedure. (*Dorris* v. *Alturas School District* (1914) 25 Cal.App. 30, 32 [142 P. 795]; *Cal-Pacific Materials Co.* v. *Redondo Beach City School Dist., supra,* 94 Cal.App.3d at p. 656.)

In applying the above principles, the obligation imposed by a stop notice is created by statutory scheme, and would not exist but for statute. The

stop notice is created by law in the absence of an agreement and clearly falls within the definition of statutory creation. (*Gardner* v. *Basich Bros. Construction Co., supra,* 44 Cal.2d at p. 194.)

However, Winick contends that the stop notice release bond is not "created" by statute. Generally, a statutory bond is an instrument which is given and accepted pursuant to some statutory provision. (*Miles* v. *Baley* (1915) 170 Cal. 151, 158-159 [149 P. 45]; 59 Cal.Jur.3d, Suretyship and Guaranty, § 15, p. 34.) In ascertaining the purpose of a bond, the surety contract must be interpreted by the same rules used in construing other types of contracts, with a view towards effectuating the purpose for which the contract was designed. (*Bloom* v. *Bender* (1957) 48 Cal.2d 793, 803 [313 P.2d 568].) It is not necessary that the bond contain a recital that it is given pursuant to a statute in order that it be determined to be a bond contemplated by the statute. Additionally, it is not necessary that the bond contain the words of the statute, if its substance and legal effect are the same as the form prescribed by such statute. (*Miles* v. *Baley, supra,* 170 Cal. at p. 157.)

In *Miles* v. *Baley,* a materialman brought suit against the surety on a bond given by the contractor on a public works project. Although the law required the contractor to post a performance bond, the bond made no reference to the statute. The court compared the language used in the statute to that in the bond and found a substantial similarity. It was also noted that the bond specifically referred to the building contract with the public entity, and was in the approximate amount required by statute. (*Ibid.*) The court in holding the bond to be statutory, declared, "The character of the bond is to be determined by its terms and the facts surrounding its execution . . . ." (*Id.,* at p. 160.) In *San Francisco Lumber Co.* v. *Bibb* (1903) 139 Cal. 192, 193-194 [72 P. 964], suit was brought on a contractor's bond. Although the bond did not recite that it was given pursuant to statute, this fact was inferred from the bond's compliance with statutory requirements, and the time and manner of its execution.

In the present case, there is abundant evidence to establish a statutory bond.[3] The bond is captioned at the top in bold print "BOND TO RELEASE MONEY WITHHELD ON STOP NOTICE—PUBLIC WORK." The bond refers to the District as obligee and Hydro as principal. The bond specifically refers to the public works contract between the District and Hydro, and where the public works project is to be erected. Additionally, the bond specifically refers to Winick's stop notice filed in the amount of $175,000. The bond is written for the amount of $219,000, which is the precise amount required by Civil Code section 3196 (125 percent of the claim).

---

[3]The bond is set out as an exhibit in the complaint.

However, the bond does not specifically refer to Civil Code section 3196. Nevertheless, the bond is in full compliance with statutory requirements, and makes specific reference to Winick's stop notice filed against the District.

Since the stop notice itself is created by statute, it is only logical to hold the bond that releases the stop notice is also created by statute. The same statutory scheme which confers stop notice rights also provides for release bonds. Such bonds being an essential part of the statutory scheme, come within the rules cited above for rights created by statutory enactments. (*Raymond* v. *Christian, supra,* 24 Cal.App.2d 92, 114-115; *Rossiter* v. *Benoit, supra,* 88 Cal.App.3d 706, 717.)

■ Where a bond is given for the purpose of complying with the mechanic's lien law, the terms of the statute are to be read into the bond and control its interpretation and effect. (*Southern Heaters Corp.* v. *N.Y. Cas. Co.* (1953) 120 Cal.App.2d 377, 379 [260 P.2d 1048].) A bond given pursuant to a particular statute is deemed to incorporate the statute into the bond. (*Los Angeles S. Co.* v. *National S. Co.* (1918) 178 Cal. 247, 252 [173 P. 79].)

Here, the terms of the statutory scheme require that after service of the stop notice, withheld contract balances be held in abeyance to establish a source of funds for recovery of claims. (Civ. Code, § 3186.) The purpose of the release bond is to substitute a surety bond for the withheld contract balance. (Civ. Code, § 3196.) This substitution is a procedural change only, and does not fundamentally alter the basic statutory purpose of insuring a potential fund for the recovery of claims. Once this purpose is deemed incorporated into the bond, there can be no doubt of the statutory origin of the release bond. (*Glens Falls Insurance Co.* v. *Murray Plumbing & Heating Corp.* (9th Cir. 1964) 330 F.2d 800, 803.)

■ Therefore, we hold that an action upon a stop notice release bond attempts to enforce a liability "created by statute" within the purview of Code of Civil Procedure section 338, subdivision 1.

■ As a final issue, we must decide when a cause of action accrues under a stop notice release bond. The general rule is that the liability of a surety accrues at the same time as that of the principal. (*Bloom* v. *Bender, supra,* 48 Cal.2d at p. 799; *Brock* v. *Western Nat. Indem. Co.* (1955) 132 Cal.App.2d 10, 16 [281 P.2d 571]; *County of Los Angeles* v. *Security Ins. Co.* (1975) 52 Cal.App.3d 808, 817 [125 Cal.Rptr. 701]; Civ. Code, § 2807.) A cause of action upon a bond conditioned to do a certain act, accrues as soon as there is a default in performance. (*Brock* v. *Western Nat. Indem. Co., supra,* 132 Cal.App.2d at p. 16.) A cause of action

accrues when a creditor is entitled to commence and maintain an action thereon and a remedy is available. (*Bogart* v. *George K. Porter Co.* (1924) 193 Cal. 197, 208 [223 P. 959, 31 A.L.R. 1045].)

In the present case the alleged default of the principal, Hydro, occurred prior to the execution of the bond. Winick's complaint alleges Hydro's default in October 1979, while the release bond was executed over one year later on December 16, 1980. Therefore, the default in performance having already occurred when the bond was executed, a cause of action could be maintained and a remedy available as of December 16, 1980. The cause of action accrued on the date of execution of the bond.

Appellant argues, without authority, that because Winick was unaware of the release bond until May 19, 1981, the above rules should not apply. However, the law regarding accrual of a cause of action on a surety agreement does not depend on a claimant's knowledge. In *Sanders* v. *American Casualty Co.* (1969) 269 Cal.App.2d 306 [74 Cal.Rptr. 634], plaintiff, materialman, suffered a default by the general contractor. Plaintiff was unaware that the general contractor had posted a payment bond, and delayed bringing suit until after expiration of the bond's limitation period. The court held that plaintiff being unaware of the bond did not prevent the running of the limitation period. (*Id.*, at p. 310; accord *Saliter* v. *Pierce Brothers Mortuaries* (1978) 81 Cal.App.3d 292, 296 [146 Cal.Rptr. 271].) In the present case, appellant's lack of knowledge did not prevent the commencement of the accrual period.

Next, Winick argues that a cause of action cannot accrue against a stop notice surety until the public entity holding funds pursuant to a stop notice, releases those funds. Appellant has alleged that the funds were not released "until at least one (1) year after the issuance of said bond." Appellant relies on the following language of Civil Code section 3196, "[u]pon the filing of such bond with the public entity, the public entity shall not withhold any money . . . from the original contractor on account of the stop notice."

Appellant's argument has no merit. The release of funds by the public entity is totally unrelated to events that trigger the running of the limitation period. The original default occurred in October of 1979, and surety's liability commenced upon execution of the bond. None of these events have any relation to the public entity's release of funds. The fact that the funds go unreleased would not in any way prevent appellant from bringing suit or recovering from the surety. The only possible consequences of retention of funds by the public entity, would be to affect remedies against the prime contractor, entitled to these funds, and possibly the public entity

as well. However, the release of funds does not prevent the accrual of a cause of action against the surety on a release bond.

Therefore, since the complaint was filed on December 27, 1984, on a cause of action accruing on December 16, 1980, the complaint is barred on its face by Code of Civil Procedure section 338, subdivision 1. (*Stafford v. Russell* (1953) 117 Cal.App.2d 319, 321 [255 P.2d 872].) Additionally, even if appellant's arguments are adopted and we were to apply the four-year limitation period of Code of Civil Procedure section 337, this action would remain time-barred.

Judgment of dismissal affirmed.

Lillie, P. J., and Johnson, J., concurred.