Filed 1/2/25  Forrester v. Advances in Mental Health etc. CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| HUMPHREY V. FORRESTER, Plaintiff and Appellant, v. ADVANCES IN MENTAL HEALTH AND ADDICTIONS TREATMENT CENTER, INC., et al., Defendants and Respondents. | B331145 (Los Angeles County Super. Ct. No. 20STCV12615) |

APPEAL from a judgment and orders of the Superior Court of Los Angeles County, Maurice A. Leiter, Judge.  Affirmed.

Humphrey V. Forrester, in propria persona, for Plaintiff and Appellant.

Wood, Smith, Henning & Berman, Brian L. Hoffman, and Nicholas M. Gedo for Defendants and Respondents.

—————————————

Appellant Humphrey Forrester sought therapy from psychologist Benjamin Stepanoff, director of Advances in Mental Health and Addictions Treatment Center, Inc., because he was having difficulty coping with stress at work. In his operative second amended complaint, Forrester alleged that Stepanoff and the Center, Respondents, sent a fax to Forrester's employer approving leave under the Family Medical Leave Act, and disclosing information about Forrester's mental health. The operative complaint alleged that this fax gave rise to breach of contract and intentional infliction of emotional distress causes of action. Respondents demurred.

The trial court sustained Respondents' demurrer without leave to amend, finding both that Forrester failed to allege the existence of a contract and that, as a matter of law, the conduct at issue was not sufficiently outrageous to support a cause of action for intentional infliction of emotional distress. The trial court subsequently denied Forrester's request for a statement of decision and his motion for a new trial. On appeal, Forrester contends the court erred in sustaining the demurrer and denying his motions. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

### A.  *Respondents Successfully Demur to Forrester's Initial Complaint*

On April 1, 2020, Forrester filed a complaint against Respondents, alleging that, on March 31, 2016, he went to the Center "[d]ue to his inability to adequately cope with the

---

[1] We limit our summary to the facts and procedural history relevant to the issues raised on appeal.

tremendous mental stress Plaintiff had experienced at his former employer." Forrester saw psychologist Stepanoff.[2] Stepanoff's first words to Forrester were to ask his age and, when Forrester responded that he was 54, Stepanoff replied: "That's old." After speaking with Forrester for fewer than ten minutes, Stepanoff told Forrester he would place him on a 30-day medical leave from work. Forrester asked about worker's compensation and Stepanoff responded that he would "take care of everything."

The next day, Forrester received a letter from his employer confirming his medical leave but referencing the Family Medical Leave Act rather than worker's compensation. Upon inquiry, Forrester's employer informed him that they had received a fax from Stepanoff authorizing leave under the FMLA. When Forrester reviewed the fax on April 4, 2016 (the next business day), he was "shocked to see his mental disability condition, including Stepanoff's own handwritten notes, was revealed in the fax . . . , which showed that Plaintiff had anxiety, stress, [and] major depression, among other impairments." A Human Resources representative also informed Forrester that incoming faxes "were received simultaneously by all 3 HR representatives."

At Forrester's next appointment with Stepanoff on April 5, 2016,[3] Forrester "loudly complained to Stepanoff[,] wanting to know why he had faxed Plaintiff's medical records to his employer without Plaintiff's authorization." Stepanoff responded,

_____

[2] Forrester alleged that the Center was "a day treatment and intensive outpatient facility that provides treatment for . . . adults experiencing . . . mental health" issues, and that Stepanoff was a psychologist and director at the Center.

[3] Subsequent iterations of the complaint state that the next appointment was on April 4, 2016.

3

"Hey, everyone makes mistakes" and clarified that an office assistant had sent the fax. Forrester was "exceedingly upset and demanded that Defendants' entire staff be properly trained. Stepanoff then had Plaintiff follow him to the front office, requested attention from an office assistant, and verbally told the assistant not to fax patients' medical records to their employers. The assistant simply said 'Ok', after which Stepanoff turned to Plaintiff and said, 'There.' " Forrester "left . . . in disgust." Forrester sought to replace Stepanoff and found a psychiatrist whom he began seeing in May 2016; he also alleged that his "last session with Defendants" occurred on June 13, 2016.

In June 2016, Forrester filed a HIPAA complaint with the United States Department of Health and Human Services against Stepanoff. In August 2016, the Department responded, stating that, after careful review, it had "determined to resolve this matter informally through the provision of technical assistance to Benjamin Stepanoff" and that the case would be closed "without further action."

Forrester's "medical leave" lasted for three months, and his employer fired him two-and-a-half months after he returned to work. He claimed that Respondents "willfully and illegally" disclosed his medical information to his employer, causing him "significant economic loss, professional damage to his reputation, pain and suffering, and severe mental and emotional distress." Forrester asserted that his complaint was "technically not being based on HIPAA but actually based on breach of written contract for doctor-patient confidentiality." The complaint alleged a single cause of action for breach of written contract.

Among the exhibits attached to the complaint were: (1) a document titled "Patient Rights and Responsibilities" that stated

4

Forrester had the right to "Confidentiality," to "Have your privacy respected," and to "Your records being kept confidential"; and (2) a document titled "HIPAA Confidentiality of Personal Health Information" that stated "Your PHI[4] is not shared with your employer unless you give written authorization." Both of these forms were signed only by Forrester.

Respondents "demur[red] to the complaint on the grounds that Plaintiff has failed to allege a contract, there is no private right of action for HIPAA violations and the action is barred by the statute of limitation[s]."[5]

In October 2020, the court (Judge Anthony Mohr) sustained the demurrer, expressing doubt that the "Patient Rights and Responsibilities" and "HIPAA Confidentiality of Personal Health Information" forms were "contracts as they appear to be mere notices of statutory rights." The court concluded that Forrester's "complaint contains no recitation of the elements of a contract or its breach" and that "the complaint contains various citations to statutes, i.e. [Civil Code] § 56.10(a), and allegations of other conduct by Stepanoff, i.e. 'ill-mannered first question' and 'no return of phone calls,'" that "further muddle Plaintiff's confusing cause of action for breach of contract." The court granted Forrester 30 days' leave to amend.

---

[4] Elsewhere on the document, PHI was defined as "personal health information."

[5] While the demurrer is absent from the appellate record, its arguments were briefly described in the court's ruling sustaining it.

5

**B.** *Respondents Successfully Demur to Forrester's First Amended Complaint*

In November 2020, Forrester filed his first amended complaint. The allegations were substantively identical, and Forrester added that "[j]ust because Plaintiff does not have a copy of the contract, Plaintiff alleges that a signed contract – an agreement or a consent form of sorts – between Defendants and Plaintiff must have been in place prior to the California-licensed Defendant Stepanoff to psychologically diagnose and treat Plaintiff." Forrester did not allege the terms of this contract. Forrester also added a cause of action for intentional infliction of emotional distress (IIED), alleging that, after Stepanoff stated that everyone made mistakes, Forrester "had gotten the impression that Stepanoff likely had intentionally faxed Plaintiff's medical records" to his employer. Forrester additionally alleged that Respondents' "malicious and despicable act" was evidenced by how they filled out portions of a "Claim for Disability Insurance (DI) Benefits" form, where they falsely stated that: (1) Forrester did not intend to file for worker's compensation benefits; (2) his disability was not caused or aggravated by his job; and (3) disclosure of the information on the form would not be medically or psychologically detrimental to Forrester.

In February 2021, the court sustained Respondents' demurrer to the first amended complaint.[6] As to the breach of contract cause of action, the court first found that the cause of action was not barred by the statute of limitations set forth in

---

[6] While the court stated it considered "the moving papers, opposition and reply," none of these documents appear in the appellate record.

6

Code of Civil Procedure section 340.5.[7]  The court stated that it could not sustain a demurrer on this basis because Respondents failed to provide any authority that wrongfully faxing medical records to Forrester's employer constituted professional negligence.  The court sustained the demurrer on the basis that Forrester failed to sufficiently allege the existence of a contract.[8]

As to the IIED cause of action, the court sustained Respondents' demurrer because the wrongdoing alleged did "not rise to the level of extreme and outrageous conduct."  The court granted 20 days' leave to amend.

### C.  *Respondents Successfully Demur to Forrester's Second Amended Complaint*

In March 2021, Forrester filed his second amended (and operative) complaint (SAC).  While the allegations remained essentially the same as his previous complaints,[9] Forrester

---

[7] Undesignated statutory references are to the Code of Civil Procedure.  (§ 340.5 ["In an action for injury or death against a health care provider based upon such person's alleged professional negligence, the time for the commencement of action shall be three years after the date of injury or one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the injury, whichever occurs first"].)

[8] The court noted that, in opposition to the demurrer, Forrester had referenced a "Consent and Agreement for Psychological Testing and Evaluation," which was purportedly signed by both Forrester and Stepanoff, but concluded it could not consider extrinsic evidence while ruling on a demurrer.

[9] Forrester added that he sought treatment at Advances not only due to the "ongoing stressors at his former work," but
*(Fn. is continued on the next page.)*

attached the "Consent and Agreement for Psychological Testing and Evaluation" to his SAC. This document stated that Forrester agreed to allow Stepanoff to perform psychological testing, assessment, or evaluation. The document also stated that Forrester understood: (1) Stepanoff agreed that the procedures for "maintaining my privacy" would be "carried out in accord with the rules and guidelines of the American Psychological Association and other professional organizations"; (2) "[t]est and test results [*sic*] will be kept in a secure place to maintain their confidentiality"; and (3) that the fees for these services would be billed to his insurance company, with Forrester remaining responsible for the balance of any amount owing. Forrester signed the agreement next to the handwritten date "3/31/16." Below his signature block was the statement: "I, the psychologist, have discussed the issues above with the client (and/or his or her parent or guardian). My observations of this person's behavior and responses give me no reason, in my professional judgment to believe that this person is not fully competent to give informed and willing consent" and Stepanoff's signature next to the handwritten date "3/31/16." The SAC also listed rules and regulations promulgated by the American Psychological Association regarding the confidentiality of patient information.

Additionally attached to the SAC were: (1) a document titled "Advances in Medical Health & Addictions Treatment Center" that stated a "notice of privacy practices" form had been provided to Forrester; and (2) a document titled "Office Policies

---

"especially the tremendous, abrupt overwhelming anxiety that was triggered the previous day."

8

and General Information Agreement to Provide Mental Services" that provided "All written or spoken material from any and all sessions, including psychological testing, will be considered confidential," unless the patient authorized release of the material, the patient presented a danger to himself, or abuse was suspected. Forrester's was the sole signature on the documents. The SAC was unclear as to whether Forrester was alleging these latter two documents also constituted agreements between him and Respondents.

Respondents again demurred. As to the breach of contract cause of action, they again argued that it was barred by the statute of limitations set forth in section 340.5, and that, although Forrester did not label his causes of action as professional negligence, he was still subject to the section 340.5 deadlines because his injuries were "related to the manner in which the defendant rendered medical services." Respondents also argued that Forrester failed to state facts sufficient to constitute a cause of action for breach of contract because Advances did not sign the "Consent and Agreement for Psychological Testing and Evaluation" and neither defendant signed "Advances in Medical Health & Addictions Treatment Center" or "Office Policies and General Information Agreement to Provide Mental Services," because the agreements lacked consideration, and because, by insisting the HIPAA privacy notice created a legally binding contract, Forrester was attempting to circumvent HIPAA, which had no private right of action.

As to the IIED claim, Respondents argued that Forrester failed to state facts sufficient to constitute a cause of action

9

because the conduct alleged was not outrageous, and because defendants had no intent to cause Forrester emotional distress.

In June 2021, Forrester opposed the demurrer. He argued that the statute of limitations set forth in section 340.5 was inapplicable, and that the court should apply the four-year statute of limitations set forth in section 337, subdivision (a). He also argued that even without Respondents' signatures on the agreements, their assent was manifested by their subsequent action of treating him. Forrester admitted that his complaint was not based on HIPAA. Finally, Forrester asserted that Respondents' acts had been outrageous. In August 2021, Respondents submitted a reply reiterating the points raised in their demurrer.

At an August 2021 hearing, the trial court (Judge Maurice A. Leiter) sustained Respondents' demurrer.[10] It again rejected Respondents' section 340.5 statute-of-limitations argument, finding that they "present[ed] no authority holding that faxing medical records is the rendering of medical services." The court agreed, however, that Forrester failed to allege a contract because he did not allege which of the documents attached was a contract and which provision was breached. The court again found that Forrester's allegations of wrongdoing did not "rise to the level of extreme and outrageous conduct." Noting that Forrester had been given three opportunities to state a cause of action and that it did not see how a fourth attempt would enable

---

[10] Although the appellate record does not indicate why Judge Leiter ruled on this demurrer as opposed to Judge Mohr, Forrester alleged in his opening brief that the case was transferred from Judge Mohr to Judge Leiter in February 2021.

Forrester to "cure the consistent defects," the court denied leave to amend.

### D.  *Forrester Appeals*

In September 2021, Forrester filed a request for a statement of decision regarding the court's ruling on the demurrer to his SAC.  The court denied his request, noting both that its previous order had "set forth the reasons for the Court's ruling" and that "A statement of decision under Code of Civil Procedure section 632 is not required."

In March 2022, Forrester filed a "Notice of Intention to Move for New Trial."  Several days later, the court issued a minute order stating, in pertinent part:  "On August 23, 2021[,] the Court sustained a demurrer without leave to amend.  This order is not a verdict subject to modification or vacation in a motion for new trial under CCP 657 et seq."  Nevertheless, Forrester proceeded to file a memorandum of points and authorities in support of a motion for new trial.  He listed 11 reasons why his motion should be granted: (1) the court improperly excluded evidence at the demurrer hearing; (2) Respondents breached the contracts by disclosing Forrester's medical information; (3) Respondents' breach was a substantial contributory factor to Forrester's termination; (4) Respondents' actions were an extreme and outrageous act of intentional infliction of emotional distress; (5) Forrester suffered significant damages due to Respondents' wrongdoing and his subsequent termination; (6) the tentative decision was not a judgment and was not binding; (7) the court did not issue a signed judgment; (8) the court did not issue a statement of decision; (9) the court's minute order granting the demurrer did not trigger the deadline to file a notice of intent to move for a new trial; (10) the court was

11

required to issue a statement of decision; and (11) the court was wrong in concluding that its order sustaining the demurrer was not subject to modification or vacation by a motion for new trial. The record discloses no further response from the court regarding this memorandum.

In September 2022, Forrester appealed the August 2021 minute order sustaining Respondents' demurrer. Our Administrative Presiding Justice dismissed the appeal, holding that "an order sustaining a demurrer without leave to amend is not a final, appealable order" and noting that "the appeal lies in the written, signed judgment or order of dismissal entered after the demurrer is sustained."

In March 2023, Forrester asked the court to enter judgment pursuant to its August 2021 minute order sustaining Respondents' demurrer. The court did so, entering judgment in Respondents' favor. Forrester timely appealed from the judgment.

## DISCUSSION

### A. *The Court Did Not Err in Sustaining Respondents' Demurrer*

" 'In our de novo review of an order sustaining a demurrer, we assume the truth of all facts properly pleaded . . . or reasonably inferred from the pleading, but not mere contentions, deductions, or conclusions of law.' " (*New Livable California v. Association of Bay Area Governments* (2020) 59 Cal.App.5th 709, 714.) "[W]e give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action.

12

[Citation.] And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment. . . .” ' [Citation.] ' “The burden of proving such reasonable possibility is squarely on the plaintiff.” ' [Citation.] Our examination of the complaint is de novo.” (*Centinela Freeman Emergency Medical Associates v. Health Net of California, Inc.* (2016) 1 Cal.5th 994, 1010.) “ 'We affirm the judgment if it is correct on any ground stated in the demurrer, regardless of the trial court's stated reasons.' ” (*Entezampour v. North Orange County Community College Dist.* (2010) 190 Cal.App.4th 832, 837.) And in reviewing the operative complaint, “ 'we look past the form of the pleading to its substance and ignore any erroneous or confusing labels [plaintiff] attached.' ” (*Larson v. UHS of Rancho Springs, Inc.* (2014) 230 Cal.App.4th 336, 342.)

### 1.    Breach of Contract

While the SAC is not entirely clear, Forrester appears to allege that Respondents breached the “Consent and Agreement for Psychological Testing and Evaluation” because they “failed to have Plaintiff's medical records kept confidential.”

Although Forrester styled his cause of action as a “breach of contract,” the SAC alleges that Respondents did so by breaching guidelines set by their professional organizations and breaching the Confidentiality of Medical Information Act (Civil Code section 56 et seq.). As such, we conclude that the cause of action is barred by the statute of limitations set forth in sections 340.5 and 338.

13

### (a)    Professional Negligence (§ 340.5)

"[W]hen a plaintiff asserts a claim against a health care provider on a legal theory other than professional negligence, courts must determine whether the claim is nonetheless based on the health care provider's professional negligence, which would require application of [the statute of limitations set forth in section 340.5]." (*Larson v. UHS of Rancho Springs, Inc.*, *supra*, 230 Cal.App.4th at p. 347.)  "When . . . the question presented concerns which limitations period applies, courts also must focus on the nature or gravamen of the claim, not the label or form of action the plaintiff selects." (*Ibid.*)

Forrester did not dispute below that Respondents are "health care provider[s]" or that his complaint was filed outside the deadlines set forth in section 340.5.  Instead, he argued that Respondents' wrongdoing did not constitute professional negligence.  We disagree.

" 'Professional negligence' means a negligent act or omission to act by a health care provider in the rendering of professional services, which act or omission is the proximate cause of a personal injury or wrongful death, provided that such services are within the scope of services for which the provider is licensed and which are not within any restriction imposed by the licensing agency or licensed hospital." (§ 340.5, subd. (2).)

At oral argument, Forrester agreed that "being on leave" was part of the professional service rendered by Respondents.  As part of placing Forrester on leave, Respondents needed to communicate with Forrester's employer, which they did by

14

sending the fax.[11]  Additionally, Forrester alleged that the American Psychological Association's Code of Conduct states that "Psychologists have a primary obligation [to] take reasonable precautions to protect confidential information obtained through or stored in any medium" and that they should "discuss confidential information obtained in their work only for appropriate scientific or professional purposes and only with persons clearly concerned with such matters."  He also alleged this Code of Conduct required psychologists to "include in written and oral reports and consultations, only information germane to the purpose for which the communication is made."

Thus, to the extent that Forrester's claim is based on an action taken by Respondents as part of Forrester's treatment— which action Forrester alleges violated professional guidelines— we conclude it is subject to the statute of limitations set forth in section 340.5; i.e., "three years after the date of injury or one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the injury, whichever occurs first."

### (b)   Confidentiality of Medical Information Act

Forrester also alleged that Respondents violated California law in their disclosure of his medical information.  As Forrester recognized in the SAC, Civil Code section 56.10—part of the

---

[11] (See *Titolo v. Cano* (2007) 157 Cal.App.4th 310, 318 [communications between physician and patients' insurance companies within "provision of medical services" because such communications are "a necessary part of the provision of medical services to those patients"].)

15

Confidentiality of Medical Information Act—provides that "[a] provider of health care . . . shall not disclose medical information regarding a patient of the provider of health care . . . without first obtaining an authorization." (Civ. Code, § 56.10, subd. (a).) A breach of this section gives rise to a private right of action. (*Vigil v. Muir Medical Group IPA, Inc.* (2022) 84 Cal.App.5th 197, 219.)

"Where a statutory scheme has been adopted that gives rise to newly created rights, the liability for breach of those rights is statutory." (*Winick Corp. v. General Ins. Co.* (1986) 187 Cal.App.3d 142, 145.) To the extent that Forrester's breach of contract cause of action is based on Respondents' alleged violation of the Confidentiality of Medical Information Act, it must have been brought within the statute of limitations for violations of that Act because liability arises, if at all, under the Act. "An action upon a liability created by statute, other than a penalty or forfeiture" must be brought within three years. (§ 338, subd. (a).)

We conclude that Forrester's "breach of contract" cause of action is subject to the deadlines set forth in sections 340.5 and 338 and is therefore time-barred.

### 2.    IIED

"Intentional infliction of emotional distress has a two-year statute of limitations." (*Wassmann v. South Orange County Community College Dist.* (2018) 24 Cal.App.5th 825, 852–853; § 335.1.) It is undisputed that Respondents' alleged misdeeds occurred in 2016, and Forrester filed his initial complaint in 2020. Any cause of action for intentional infliction of emotional distress is therefore barred by the statute of limitations, and we need not consider whether the trial court correctly determined

16

that Respondents' actions were insufficiently outrageous to state facts for an IIED claim.

In supplemental briefing, Forrester contends that the two-year statute of limitations should be subject to equitable tolling. We disagree. "The equitable tolling of statutes of limitations is a judicially created, nonstatutory doctrine." (*McDonald v. Antelope Valley Community College Dist.* (2008) 45 Cal.4th 88, 99.) "It is 'designed to prevent unjust and technical forfeitures of the right to a trial on the merits when the purpose of the statute of limitations—timely notice to the defendant of the plaintiff's claims—has been satisfied.' " (*Ibid.*) "Broadly speaking, the doctrine applies ' "[w]hen an injured person has several legal remedies and, reasonably and in good faith, pursues one." ' " (*Id.* at p. 100.)

The record discloses that, aside from this action, Forrester also filed a complaint with the Department of Health and Human Services regarding Respondents' disclosures of his mental health information. Forrester admits, however, that in August 2016, the Department informed him it was resolving this issue with the "provision of technical assistance" to Stepanoff, and that the case would be closed "without further action." The record does not disclose that Forrester pursued any other legal remedies before filing his initial complaint. Thus, even assuming—without deciding—that the statute of limitations should have been equitably tolled during the pendency of his HIPAA complaint, Forrester's IIED cause of action would still be time-barred, because it was brought more than two years after the HIPAA complaint was resolved in August 2016.

17

**B.**     *The Court Did Not Err in Denying Forrester's Request for a Statement of Decision*

Forrester requested the trial court issue a statement of decision regarding its ruling sustaining Respondents' demurrer. The trial court denied that request, holding that "[a] statement of decision under Code of Civil Procedure section 632 is not required." Forrester contends the court erred because "[t]he court order did not explain 'the factual and legal basis for its decision as to each of the principal controverted issues['] that made Plaintiff's request 'not required'." We disagree.

"In superior courts, upon the trial of a question of fact by the court, written findings of fact and conclusions of law shall not be required. The court shall issue a statement of decision explaining the factual and legal basis for its decision as to each of the principal controverted issues at trial upon the request of any party appearing at the trial." (§ 632.) Here, there was no trial of a question of fact. The court sustained a demurrer, assuming the truth of the factual allegations in the SAC. No statement of decision was required. (See *Miller v. Bakersfield News-Bulletin, Inc.* (1975) 44 Cal.App.3d 899, 900–901, 903 [after "demurrer was sustained without leave to amend as to the complaint," appellate court affirmed trial court's refusal "to require findings of fact and conclusions of law as demanded by plaintiff" because "[f]indings of fact and conclusions of law can only be demanded after a trial. (Code Civ. Proc., § 632.) No trial took place here, plaintiff having failed to state a cause of action"].)

18

### C.    *Forrester Fails to Demonstrate the Court Prejudicially Erred in Denying His Motion for New Trial*

After Forrester filed a "Notice of Intention to Move for New Trial," the court issued a minute order stating, in pertinent part: "On August 23, 2021[,] the Court sustained a demurrer without leave to amend.  This order is not a verdict subject to modification or vacation in a motion for new trial under CCP 657 et seq."  Forrester contends the court erred because he "had justifiably provided grounds and reasons in his Notice of Intent to Move for a New Trial . . . due to the court's order '. . . materially affecting the substantial rights of such party [Plaintiff] for *all* of the grounds above (1 through 4), not just *one*['] " and because he had filed the requisite supporting documents.

Neither party has provided any authority addressing whether a motion for new trial lies after the court sustains a demurrer without leave to amend.  Our independent research has uncovered authority suggesting that such a motion is proper after the entry of judgment following the sustaining of a demurrer. (See *Carney v. Simmonds* (1957) 49 Cal.2d 84, 87, 91 [motion for new trial proper after court entered judgment following granting of motion for judgment on the pleadings without leave to amend]; *Evarts v. Jones* (1959) 170 Cal.App.2d 197, 206 [reversing trial court's refusal "to set the motion [for new trial] for hearing on the ground that such a motion does not lie where a judgment of dismissal has been entered after sustaining a demurrer without leave to amend" because "[a] motion for a new trial is proper under such circumstances"].)  At the time Forrester made his motion, a judgment had yet to be entered.

19

We need not consider this issue because the SAC's causes of action are fatally defective.  Thus, even if the court should have heard Forrester's motion, no prejudice resulted from its refusal to do so.  (See, e.g., *Kourounian v. California Dept. of Tax & Fee Administration* (2023) 91 Cal.App.5th 1100, 1112 ["Error alone is not sufficient to reverse a judgment.  We reverse only when a party demonstrates that prejudicial error occurred and caused appellant 'substantial injury' and that a 'different result would have been probable' absent the error"]; § 475 ["The court must, in every stage of an action, disregard any error, improper ruling, instruction, or defect, in the pleadings or proceedings which, in the opinion of said court, does not affect the substantial rights of the parties.  No judgment, decision, or decree shall be reversed or affected by reason of any error, ruling, instruction, or defect, unless it shall appear from the record that such error, ruling, instruction, or defect was prejudicial, and also that by reason of such error, ruling, instruction, or defect, the said party complaining or appealing sustained and suffered substantial injury, and that a different result would have been probable if such error, ruling, instruction, or defect had not occurred or existed.  There shall be no presumption that error is prejudicial, or that injury was done if error is shown"].)[12]

### D.    *Leave to Amend*

Forrester has not suggested how he could amend the complaint to cure the defects discussed above, nor do we see how

---

[12] Forrester noted at oral argument that he was no longer "interested in" his arguments regarding a statement of decision and motion for new trial, and was "killing those two" arguments.

he could. We conclude the court did not err in sustaining the demurrer without leave to amend.

## DISPOSITION

The trial court's judgment and orders are affirmed. Respondents are awarded their costs on appeal.

NOT TO BE PUBLISHED


KLATCHKO, J.*

We concur:


ROTHSCHILD, P. J.


WEINGART, J.

---

\* Judge of the Riverside County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.